# In the United States Court of Federal Claims

No. 17-1056V

(Filed Under Seal:  May 10, 2022)

(Reissued for Publication:  May 18, 2022)

**NOT FOR PUBLICATION**

|  |  |
|---|---|
| TERESA K. FIELDS, Executrix for the estate of James T. Lawrence, | ) ) ) ) |
| *Petitioner*, | ) ) ) |
| v. | ) ) ) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) |
| *Respondent*. | ) ) ) |

*Carol L. Gallagher*, Carol L. Gallagher, Esquire LLC, Somers Point, NJ, for Petitioner.

*Colleen C. Hartley*, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.  With her on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *C. Salvatore D'alessio*, Acting Director, *Heather L. Pearlman*, Deputy Director, and *Alexis B. Babcock*, Assistant Director.

### OPINION AND ORDER[*]

**SOLOMSON**, **Judge.**

      Petitioner, Teresa K. Fields, acting in her position as the executrix for the estate of James T. Lawrence, seeks review of Special Master Christian J. Moran's November 2, 2021, order reducing claimed attorneys' fees and costs.  Petitioner brought this action pursuant to the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 U.S.C. § 300aa-1, *et seq.*, alleging that the influenza ("flu") vaccine Mr. Lawrence received on December 16, 2015, caused him to suffer from Guillain–Barré syndrome.  Based on a joint

---

[*] The Court initially issued this opinion on May 10, 2022, and directed the parties to propose redactions of confidential information by May 17, 2022.  ECF No. 99.  The parties did not propose any redactions.  Accordingly, the Court reissues this opinion in its original form.

stipulation, Special Master Moran granted the petition and awarded compensation, finding that the stipulation proposed a reasonable award of damages for Petitioner's pain and suffering. Petitioner subsequently sought attorneys' fees and costs pursuant to the Vaccine Act, which the Special Master generally granted, but reduced the claimed attorneys' fees by thirty percent due to the vagueness of the billing entries submitted by Petitioner's counsel. The Special Master further reduced the claimed fees and costs in light of particular food costs the Special Master found unreasonable. This case is now before the Court on Petitioner's motion for review of the Special Master's fee decision, pursuant to 42 U.S.C. § 300aa-12.

For the reasons explained below, the Court grants in part and denies in part Petitioner's motion for review.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On December 16, 2015, Mr. Lawrence received the flu vaccine. ECF No. 1 at 1; *Fields v. Sec'y of Health & Hum. Servs.*, 2020 WL 5667945, at *1 (Fed. Cl. Aug. 19, 2020). On August 4, 2017, Mr. Lawrence filed a timely petition for compensation with Respondent, the Secretary of Health and Human Services, pursuant to 42 U.S.C. § 300aa-11, alleging that he developed Guillain–Barré syndrome as a result of the vaccine. ECF No. 1 at 1; *Fields*, 2020 WL 5667945, at *1.

Petitioner's counsel commenced work on this case in June 2016, almost fourteen months before Petitioner filed the original petition for compensation. ECF No. 90-1 at 1. In support of the petition, Petitioner filed approximately 9,000 pages of medical records. *See* ECF No. 82 at 1–2. On May 7, 2018, Respondent informed the Special Master that the government wished to engage in settlement negotiations. ECF No. 21 at 1.

During the course of settlement negotiations, the parties retained respective life care planners to assess Mr. Lawrence's future care needs. ECF No. 23 at 1. On June 27, 2018, the life care planners, accompanied by counsel for the parties and Mr. Lawrence's son, visited and evaluated Mr. Lawrence at his nursing home in Louisville, Kentucky. ECF No. 23 at 1; ECF No. 26 at 1.

On April 9, 2019, Petitioner's counsel informed the Special Master that Petitioner intended to pursue court-appointed guardianship for Mr. Lawrence, due to his deteriorating mental capacity. ECF No. 45 at 1. On September 25, 2019, before Petitioner's counsel could establish guardianship, Mr. Lawrence died. ECF No. 65 at 1; *Fields*, 2020 WL 5667945, at *1. Although the parties had been close to reaching a tentative settlement, Respondent requested an updated settlement demand from Mr. Lawrence's estate (following his death) to clarify if any additional damages were sought, including the death benefit. *See* ECF No. 62 at 1. On November 20, 2019, Petitioner, the executrix of Mr. Lawrence's estate, replaced Mr. Lawrence as petitioner in this matter. ECF No. 61

at 1; *Fields*, 2020 WL 5667945, at *1. On April 28, 2020, Petitioner filed an amended petition to include Mr. Lawrence's death as allegedly related to his receipt of the flu vaccine. ECF No. 77 at 1–2; *Fields*, 2020 WL 5667945, at *1.

On May 5, 2020, the parties informed the Special Master that they had reached a tentative settlement agreement. *See* ECF No. 80. On August 19, 2020, the parties agreed to a joint stipulation to settle the case, ECF No. 85, which the Special Master approved, ECF No. 86; *Fields*, 2020 WL 5667945, at *1.

On September 10, 2020, Petitioner filed a motion for reasonable attorneys' fees and costs for the services of her attorney, Ms. Carol Gallagher, pursuant to 42 U.S.C. § 300aa-15(e)(1), seeking a total of $114,756.71 ($103,287.65 in attorneys' fees and $11,466.06 in attorneys' costs). ECF No. 90 at 3. That same day, Respondent filed a response to Petitioner's motion for attorneys' fees and costs. ECF No. 91. In the response, Respondent represented that it "is satisfied [that] the statutory requirements for an award of attorneys' fees and costs [were] met" and requested that the Special Master "exercise [his] discretion and determine a reasonable award." *Id.* at 2–3.

On November 2, 2021, the Special Master awarded Petitioner $83,341.89 in attorneys' fees and costs — $31,414.82 less than Petitioner had requested. ECF No. 93 ("Fee Decision") at 5. As to fees, the Special Master approved Ms. Gallagher's hourly rates, but reduced the total number of hours billed by thirty percent, finding that "an overall reduction to the number of hours billed is warranted." *Id.* at 3. The Special Master explained his reasoning as follows:

> The reduction is necessary due to the amount of correspondence billed and its vagueness. . . . In the instant case, most of the billing entries concerning communication do not contain any indication of the topic of that communication, making it difficult for the undersigned to determine whether such communication was necessary and reasonable. This is especially pertinent in a case such as this one, where the legal side was relatively routine but the protracted nature of establishing a guardianship for Mr. Lawrence, both before and after his death, would necessitate more communication with the client and her family than would typically be expected. Therefore, while the undersigned would expect a greater than average amount of communication with various individuals in this case, the overall amount of time for communication still appears excessive, and the vagueness of the entries frustrates the undersigned's ability to then determine whether the communication was reasonable and necessary.

3

> The undersigned also notes that infrequent entries throughout the billing records are non-compensable for various reasons — some communication entries are plainly excessive, such as one-tenth of an hour billed to leave a voice mail or to attempt a call which received a disconnected number notice, while other entries involve correspondence with records providers, which in the undersigned's experience are typically paralegal work at best (requesting records, checking on the status of overdue requested records) or clerical (handling payment of records).
>
> In sum, the overall number of hours billed at an attorney's rate (269.6) is excessive in the undersigned's experience given the complexity and duration of Ms. Fields' petition. Ms. Gallagher's excessive billing on numerous occasions, particularly regarding excessive communication with her clients, has led to a reduction in requested amounts. *See Rocha v. Sec'y of Health & Human Servs.*, No. 16-241V, 2020 WL 3792211, at *3–4 (Fed. Cl. Spec. Mstr. Jun. 11, 2020); [*De Souza v. Sec'y of Health & Hum. Servs.*, 141 Fed. Cl. 338, 346–47 (2018)]. Upon review[,] the undersigned finds a thirty percent reduction to the hours billed necessary in order to achieve "rough justice" resulting in a reduction of $30,986.29.

Fee Decision at 3–4.

With respect to costs, the Special Master also refused to award Petitioner all the costs claimed. In particular, the Special Master reduced the amount billed for food and beverage costs:

> A total of $573.03 for food and beverages was billed over the course of three days while Ms. Gallagher was in Louisville, Kentucky to perform a site visit with [the life care planner] (Ms. Gallagher arrived in Louisville on June 26, 2018, and left on June 28, 2018). No justification has been offered as to why such high food charges were necessary, and the undersigned finds the total amount unreasonable. The GSA per diem for Louisville, Kentucky in 2018 was $59.00 for a full day and $44.25 on the first and last day of travel. The undersigned will reimburse petitioner these amounts for the meals — thus a reasonable amount for Ms. Gallagher's meals is $147.50.

*Id.* at 5 (citation omitted) (footnote omitted).

4

On November 30, 2021, Petitioner filed a motion for review of the Special Master's decision regarding attorneys' fees and costs, challenging (1) the Special Master's decision to reduce the number of hours billed, and (2) the Special Master's decision to reduce the costs for meals charged. ECF No. 96 ("Pet. Mot. for Rev.") at 1. Respondent filed a response on December 23, 2021. ECF No. 98 ("Sec. Resp.").

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court possesses jurisdiction, pursuant to the Vaccine Act, to review a special master's determination of attorneys' fees and costs upon the filing of a petition from either party within thirty days of that decision. 42 U.S.C. § 300aa-12(e)(1). On review, the Court may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

*Id.* § 300aa-12(e)(2).

This Court reviews the decision of a special master to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa–12(e)(2)(B)). A special master's determination of reasonable attorneys' fees and costs is a discretionary ruling that this Court reviews under the abuse of discretion standard. *Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1356 (Fed. Cir. 2011). While a special master's decision "is entitled to deference," *Morse v. Sec'y of Health & Hum. Servs.*, 93 Fed. Cl. 780, 783 (2010), this Court will find that a special master has abused his discretion if his decision: "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [special master] could rationally base [his] decision," *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997).

## III.   DISCUSSION

Petitioner challenges both (1) the Special Master's decision to reduce the number of hours billed for the services of Ms. Gallagher by thirty percent, and (2) the Special

5

Master's decision to deny compensation for certain meal charges. This Court reviews each of these challenges in turn.

### A. The Special Master Abused His Discretion in Reducing Attorneys' Fees by Thirty Percent

#### 1. The Special Master Properly Applied the Lodestar Method

The Vaccine Act allows recovery of "*reasonable* attorneys' fees, and other costs." 42 U.S.C. §§ 300aa-15(e)(1) (emphasis added). In determining what constitutes "reasonable attorneys' fees," the United States Court of Appeals for the Federal Circuit, this Court's immediate appellate court, has "endorsed the use of the lodestar approach." *Avera*, 515 F.3d at 1347. Under the lodestar method, the special master must "first determine[] an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,'" and "[o]nce a [special master] makes that initial calculation, [the special master] may then make an upward or downward departure to the fee award" where appropriate. *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

As discussed *supra* Section II, a "special master is afforded wide discretion in determining the reasonableness of costs, as well as attorneys' fees." *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). The lodestar method thus allows a special master to use his discretion and reduce a fee award by excluding hours billed that were not "reasonably expended on the litigation." *Avera,* 515 F.3d at 1347–38 (quoting *Blum*, 465 U.S. at 888). Hours that are not "reasonably expended" include hours that are "excessive, redundant or otherwise unnecessary." *Saxton ex rel Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Furthermore, because an attorney's billing statements are valid only if they "describe the purpose of the activity sufficiently to determine if the charges [a]re reasonable," a special master may exclude all fees charged for vague billing entries. *Avgoustis v. Shinseki*, 639 F.3d 1340, 1341, 1344–45 (Fed. Cir. 2011); *see also Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

In addition, "administrative, clerical, and secretarial tasks that could be performed by someone who is not an attorney or paralegal are not compensable." *Adkins v. United States*, 154 Fed. Cl. 290, 309 (2021). Likewise, an attorney may not bill for paralegal work at an attorney's rate. *See Action on Smoking & Health v. Civ. Aeronautics Bd.*, 724 F.2d 211, 220–21 (D.C. Cir. 1984) ("Hours are not reasonably expended if an attorney . . . performs tasks that are normally performed by paralegals, clerical personnel or other non-attorneys. If an application contains hours unreasonably expended, a court must make appropriate reductions."). As the Supreme Court established in *Fox v. Vice*, 563 U.S. 826, 838 (2011), in determining a proper fee award, "courts need not, and indeed should not,

6

become green-eyeshade accountants," as the goal in awarding attorneys' fees is to achieve "rough justice," not "auditing perfection."

Here, Petitioner argues that: (1) the Special Master "devised his own test" that was inconsistent with the lodestar method, Pet. Mot. for Rev. at 8, 14, and that the Special Master's reliance on "rough justice" to determine her fee award was "an aberration of the lodestar method," *id.* at 8; and (2) the Special Master is required to analyze each fee request in a consistent manner and "apply[] a uniform and reasonable standard of evaluation," *id.* at 15–16, 19. The Court finds that Petitioner's arguments fail in the face of the applicable standards.

*First*, despite Petitioner's assertions to the contrary, the Special Master did not "devise[] his own test" in determining reasonable attorneys' fees, *id.* at 8, 14; rather, the Special Master correctly applied the lodestar method. Specifically, the Special Master first "reviewed the requested rates and [found] them to be reasonable and consistent with what special masters have previously awarded to Ms. Gallagher for her Vaccine Program work," Fee Decision at 3, in accordance with the first step of the lodestar method, *see Avera*, 515 F.3d at 1347–48. Next, the Special Master reviewed the number of hours billed by Ms. Gallagher and determined that "an overall reduction to the number of hours billed [was] warranted . . . due to the amount of correspondence billed and its vagueness." Fee Decision at 3. Such a finding was appropriate, as billing entries that do not adequately specify the purpose of the attorney's activity are non-compensable. *See Avgoustis*, 639 F.3d. at 1344–45. Moreover, the Special Master's acted within his discretion in relying on "rough justice" in his determination of an appropriate fee award, as a special master "may take into account [his] overall sense of a suit[] and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. Such "rough justice" is particularly appropriate in a case like this one, where the attorney's correspondence is "excessive, and the vagueness of the entries frustrates [the special master's] ability to . . . determine whether the communication was reasonable and necessary." Fee Decision at 4; *see Hensley*, 461 U.S. at 434 (holding that "unnecessary" expenses are not reasonable); *Saxton*, 3 F.3d at 1521 (same).

The Special Master also reduced the award based on "infrequent entries" for communications that were "plainly excessive, such as one-tenth of an hour billed to leave a voice mail or to attempt a call which received a disconnected number notice." Fee Decision at 4. Billing entries encompassing an unreasonably long amount of time for the task performed therein are also considered "excessive" and thus unreasonable. *See Hensley,* 461 U.S. at 434. Finally, the Special Master found that "other entries involve correspondence with records providers, which[,] in the undersigned's experience[,] are typically paralegal work at best (requesting records, checking on the status of overdue requested records) or clerical (handling payment of records)." Fee Decision at 4. Because the Special Master's reduction of fees was based on billing entries that were for "paralegal work" or "clerical [work]," *id.*, which are considered hours not "reasonably expended"

— and thus unreasonable billing entries — the reduction was exercised within the bounds of the lodestar method, *see Adkins*, 154 Fed. Cl. at 309; *Action on Smoking & Health*, 724 F.2d at 220–21; *Hensley*, 461 U.S. at 434.

*Second*, when assessing an attorney's billing records to determine the appropriate fee award, including whether a reduction in the number of hours billed is warranted, a special master is "not 'required to base his decision[] . . . on a line-by-line evaluation of the fee application.'" *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 206 (2009) (quoting *Carter v. Sec'y of the Dep't of Health & Hum. Servs.*, 2007 WL 2241877, at *3 (Fed. Cl. Spec. Mstr. July 13, 2007)). In that regard, a special master may impose an across-the-board percentage reduction in a fee award. *See Hensley*, 461 U.S. at 438 n.13 (reducing the fees of an attorney by thirty percent "to account for his inexperience and failure to keep contemporaneous time records"); *see also New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) ("[C]ourts have endorsed percentage cuts as a practical means of trimming fat from a fee application.").

Thus, the Special Master was not required to conduct a line-by-line evaluation of Petitioner's fee application, *see Sabella*, 86 Fed. Cl. at 206, like Petitioner notes the Special Master did in a previous case,[1] and he may employ an across-the-board reduction of an attorney's hours, *see Hensley*, 461 U.S. at 438 n.13. Moreover, even if the Special Master had performed a line-by-line analysis of the billing record in determining prior fee awards, the Special Master was under no obligation to use the same analytical method in determining subsequent fee awards, as "each attorney fee determination stands or falls on its own merits." *De Souza*, 141 Fed. Cl. at 347 (2018) ("[T]he fact that the special master was more tolerant of some of the vague entries billed in *Kirdzik*[, 2016 WL 4608171, at *2] does not render his more rigorous approach in this case an arbitrary one."); *see also Hanlon v. Sec'y of Health & Hum. Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are [not] bound by their own decisions . . . ."), *aff'd,* 191 F.3d 1344 (Fed. Cir. 1999).

In sum, the Court concludes that the Special Master appropriately applied the lodestar method.

### 2. The Special Master Failed to Provide Sufficient Reasoning to Justify His Thirty Percent Reduction in Attorneys' Fees

Next, Petitioner argues that the Special Master failed to provide a sufficient explanation for his fee reduction. Pet. Mot. for Rev. at 16–19. Petitioner's argument is

---

[1] Pet. Mot. for Rev. at 15–16, 21 (arguing that the Special Master conducted a line-by-line analysis of Ms. Gallagher's billing records in *Kirdzik v. Sec'y of Health*, 2016 WL 4608171, at *2 (Fed. Cl. Spec. Mstr. Aug. 10, 2016), and found her records "sufficiently detailed," and, therefore, given that "Petitioner's timesheets in the instant case are set forth in the same manner and with the same particularity as in *Kirdzik*," the Special Master's failure to conduct a similar analysis here "is tantamount to [the Special Master] exercising his own will").

8

twofold.  First, Petitioner contends that the "[S]pecial [M]aster prejudged [P]etitioner's fees and categorically cut or reduced certain types of fees without adequately considering the facts and circumstances of the instant case and without adequately citing to more particular billing entries."  *Id.* at 19.  Second, Petitioner asserts that the Special Master's fee reduction of thirty percent was unwarranted because the billing entry categories the Special Master identified — those that were either (1) "plainly excessive" in light of the task performed, (2) paralegal work charged at an attorney's rate, or (3) clerical work charged at an attorney's rate — amount to less than ten percent of the total hours Ms. Gallagher billed.  *Id.* at 17.

The Court finds that the Special Master failed to provide sufficient reasoning for his thirty percent reduction to the fee award.

### a. The Special Master Failed to Provide "Concise but Clear" Reasoning for the Thirty Percent Fee Reduction

When reducing a fee award, a special master must provide a "concise but clear" explanation for the reduction and should offer specific examples from the attorney's billing record to support the extent of the reduction.  *Hensley*, 461 U.S. at 437; *see also Abbott v. Sec'y of Health & Hum. Servs.*, 135 Fed. Cl. 107, 112 (2017) (finding that the special master did not abuse his discretion when he provided specific examples of billing entries that were vague); *Guerrero v. Sec'y of Health & Hum. Servs.*, 120 Fed. Cl. 474, 481 (2015) (finding that the special master abused his discretion when he failed to "cite any instance of overbilling[] or identify a time period when billing levels were inappropriate in light of the tasks done").  *But see De Souza v. Sec'y of Health & Hum. Servs.*, 2018 WL 4624249, at *3 (Fed. Cl. Spec. Mstr. July 3, 2018) (reducing attorneys' fees by thirty-five percent while providing only that "many entries are something like '[p]reparation of e-mail to client'"), *aff'd*, 141 Fed. Cl. 338.

Fee explanations "need not be painstaking, . . . but at a bare minimum, the order awarding fees, read against the backdrop of the record as a whole, must expose the [special master]'s thought process and show the method and manner underlying [his] decisional calculus."  *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir. 1997).  The special master need not, however, "identify and justify each disallowed hour."  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005).  Furthermore, a special master may rely on his prior experience, including his experience with a particular attorney and that attorney's relative experience with the vaccine program, in determining the number of hours that are reasonable, *see Saxton*, 3 F.3d. at 1520–21, provided that the special master articulates the "relevant experience and the reasoning that [he] used, based on that experience, to reach [his] conclusion," *Wasson ex rel Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991).  Nevertheless, when a special master employs an across-the-board or percentage reduction, the decision "is subject to heightened scrutiny."  *Guerrero*, 120 Fed. Cl. at 481 (quoting *Int'l Rectifier Corp. v. Samsung Elecs. Co.*,

9

424 F.3d 1235, 1239 (Fed. Cir. 2005)); *see also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("[T]he utility of across-the-board percentage cuts . . . does not relieve district courts of the requirement to concisely but clearly articulate their reasons for selecting specific percentage reductions." (citation omitted)).

Here, the Special Master employed an across-the-board reduction to Petitioner's request for attorneys' fees. In the fee decision, however, the Special Master failed to provide a single example of a vague billing entry to justify his thirty percent reduction, noting merely that the "overall amount of . . . communication . . . [was] excessive," and that "the vagueness of the entries frustrate[d] [his] ability to then determine whether the communication was reasonable and necessary." Fee Decision at 4. While the Special Master later provided examples of billing entries that he viewed as "non-compensable for various reasons," he also noted that such entries were "infrequent," and thus did not account for the vast majority of the fee reduction. *Id.* Finally, the Special Master asserted that "the overall number of hours billed at an attorney's rate is excessive . . . given the complexity and duration of Ms. Fields' petition," *id.*, but he failed to justify or provide any precedent as to why he thought those hours were excessive to the extent that they warranted a thirty percent reduction, *see Guerrero*, 120 Fed. Cl. at 481; *Loranger*, 10 F.3d at 783. Instead, the Special Master relied on Ms. Gallagher's history of "excessive billing" and "excessive communication with her clients" in previous cases to justify the thirty percent reduction. Fee Decision at 4.

Additionally, while the Special Master relied on his experience in determining that a fee reduction was warranted, he did not articulate the "relevant experience and the reasoning that [he] used, based on that experience, to reach [his] conclusion" that a thirty percent reduction was warranted. *See Wasson*, 24 Cl. Ct. at 486. Instead, the Special Master simply noted that "the overall number of hours billed at an attorney's rate (269.6) is excessive in the undersigned's experience given the complexity and duration of Ms. Fields' petition" and that Ms. Gallagher has had her fees reduced in the past. Fee Decision at 4. The Special Master, however, failed to provide any sort of barometer for the number of hours that *would* be considered reasonable in a case of comparable difficulty. *Id.* The Special Master thus failed to provide a "concise but clear" explanation for his thirty percent fee reduction. *Hensley*, 461 U.S. at 437.

Accordingly, the Court finds that the Special Master failed to provide a sufficient explanation for the thirty percent reduction.

### b. The Billing Record Does Not Support a Reduction of Thirty Percent

A special master abuses his discretion when "the record contains no evidence on which the . . . [special master] rationally could have based his decision." *Murphy v. Sec'y of Dep't of Health & Hum. Servs.*, 30 Fed. Cl. 60, 61 (1993) (alterations in original) (quoting *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991)), *aff'd,* 48 F.3d 1236 (Fed. Cir.

1995). This Court may conduct its own review of the billing record to determine if the extent of the special master's reduction is supported by the record. *Cf. De Souza*, 141 Fed. Cl. at 346 (upholding the special master's thirty-five percent across-the-board reduction in attorneys' hours *when the court's own review of the record* revealed that over thirty percent of the hours billed contained vague correspondence entries). As discussed above, a special master may exclude vague billing entries in his decisional calculus. *See Avgoustis*, 639 F.3d. at 1344–45. Notably, however, this Court has held that an attorney's "lack of detail" in her billing entries can be "cured by cross-checking the time sheets . . . and by reviewing docket entries to determine what specific filings were being made at particular times." *Applegate v. United States*, 52 Fed. Cl. 751, 769 (2002), *aff'd*, 70 F. App'x 582 (Fed. Cir. 2003).

This Court has examined Ms. Gallagher's billing record and finds that the Special Master's across-the-board, thirty percent reduction to hours billed cannot be reconciled with the record. In reviewing the Special Master's adjustment, the Court attempted to replicate the Special Master's analysis, and thus excluded from reimbursement billing entries that are deficient, based upon the following categories the Special Master identified: (1) "entries concerning communication [that] do not contain any indication of the topic of that communication"; (2) entries that are "plainly excessive," such as one-tenth of an hour billed for text messages, voicemails, or unanswered phone calls; (3) entries that "involve correspondence with records providers" (aside from communications threatening a subpoena or a request for a revision of the Medicaid lien amount); (4) entries considered "paralegal work," including "requesting records, checking on the status of overdue requested records"; and (5) entries for "clerical" work, including "handling payment of records." Fee Decision at 4. Additionally, the Court disqualified any vague billing entries for which the purpose could not be easily ascertained from the preceding entries or from the case's docket sheet. *See Applegate*, 52 Fed. Cl. at 769.

Even excluding as not compensable the hours (or a significant percentage of the hours) associated with each of the foregoing categories, the Court could only substantiate a reduction of approximately 15 percent of Petitioner's requested attorneys' fees, far short of the Special Master's blanket, thirty percent reduction. Therefore, and in the absence of a more detailed explanation from the Special Master, the Court finds that the Special Master's thirty percent reduction of Petitioner's attorneys' fees was grossly excessive and, thus, an abuse of discretion.

Accordingly, the Court grants Petitioner's motion for review of the Special Master's reduction in attorneys' fees. The Court will remand this issue to the Special Master for further consideration.

### B. The Special Master Did Not Abuse His Discretion in Reducing Attorneys' Costs

Petitioner's second challenge pertains to the Special Master's reduction in Petitioner's requested attorneys' costs. Petitioner argues that the Special Master acted "arbitrar[ily] in failing to consider the totality of [P]etitioner's costs." Pet. Mot. for Rev. at 10. Specifically, Petitioner argues that the Special Master should have been more forgiving in his award of attorneys' costs because "[P]etitioner did not submit any costs for a flight from New Jersey to Louisville, Kentucky, or for a rental car." *Id.* Additionally, Petitioner contests the Special Master's determination that the total costs for food charges were unreasonable, because, by her estimation, "$573.03 for two people for 3 days of meals[, which] amounts to $95.50 per day for two meals a day and even less for three meals per day," is reasonable. *Id.* The Court finds that the Special Master's reduction in Petitioner's food costs was not an abuse of discretion.

As indicated above, a special master is "afforded wide discretion in determining the reasonableness of costs." *Perreira*, 27 Fed. Cl. at 34. Thus, a special master has discretion to determine whether an attorney's food costs are reasonable. *See id.*

Here, the Special Master found that "[n]o justification [had] been offered as to why such high food charges were necessary," and he thus determined that "the total amount [was] unreasonable." Fee Decision at 5. Furthermore, in reducing Petitioner's food costs, the Special Master relied on the 2018 GSA per diem rate for food costs in Louisville, Kentucky and, accordingly, reduced Petitioner's food costs by $425.53. *Id.* Because the Special Master's reliance on an objective metric can hardly qualify as an abuse of discretion, the Court affirms the Special Master's decision to reduce Petitioner's food costs to $147.50. *See Perreira*, 27 Fed. Cl. at 34.

Accordingly, the Court denies Petitioner's motion for review of the Special Master's reduction in attorneys' costs.

### C. Petitioner Is Entitled to an Award of Attorneys' Fees for Fees Incurred in the Preparation of the Motion for Review

Petitioner requests $9,094.80 in reimbursement for attorneys' fees incurred in the preparation of her motion for review. Pet. Mot. for Rev. at 23. The requested amount represents 21.45 hours of work performed at a rate of $424 per hour. *Id.* at 26 (Exhibit B). Respondent argues that the Court should decline to award any fees related to this appeal, contending that Petitioner's appeal represents an attempt to "challenge[] purely discretionary findings by the special master." Sec. Resp. at 9.

Pursuant to the Vaccine Act, this Court may award petitioners compensation in "an amount to cover (A) reasonable attorneys' fees, and (B) other costs, incurred *in any*

12

*proceeding* on such petition." 42 U.S.C. § 300aa-15(e)(1) (emphasis added); *see also* Rule 34(b) of the Vaccine Rules of the United States Court of Federal Claims ("Following review by an assigned judge of a special master's decision on attorney's fees and costs under Vaccine Rule 13, a request for any additional fees and costs relating to such review will be decided either by: (1) the special master if the case is on remand; or (2) the assigned judge if the case is not on remand, although the assigned judge may remand the case to the special master for consideration of such motion."); *Guerrero*, 120 Fed. Cl. at 485 (awarding Petitioner an interim award to cover her attorneys' fees related to her motion for review).

In light of this Court's remand for the Special Master to reconsider an award of attorneys' fees, the Special Master shall also consider an award of reasonable attorneys' fees incurred in the preparation of Petitioner's motion for review consistent with the lodestar method. *See* Vaccine Rule 34(b).

### IV. CONCLUSION

Based on the foregoing, the Court concludes that the Special Master abused his discretion in reducing Petitioner's attorneys' fees. The Court finds, however, that the Special Master did not abuse his discretion in reducing Petitioner's attorneys' costs.

Accordingly, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Petitioner's motion for review. The Special Master's decision is **VACATED** with respect to the award of attorneys' fees but **AFFIRMED** in all other respects. The Court **REMANDS** this case to the Special Master for consideration of the appropriate attorneys' fees award consistent with this opinion.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
**Matthew H. Solomson**
**Judge**

13